**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| A.C., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | 1:20-CV-183 (TQL) |
| | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**ORDER**

Plaintiff filed this Social Security appeal on September 23, 2020, challenging the Commissioner's final decision denying her disability application, finding her not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Both parties consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to, ordering the entry of judgment. (Doc. 18; Clerk's Entry, July 19, 2021). The parties may appeal from the judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals. 28 U.S.C. § 636(c)(3). Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

***Legal Standard***

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, which is defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Brito v. Comm'r, Soc. Sec.*

*Admin.*, 687 F. App'x 801, 803 (11th Cir. 2017) (per curiam) (first citing *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); and then quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citations omitted).

"Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid. The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-46 (citations omitted).

Under the Regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. Third, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity (RFC) will allow a return to past relevant work. Finally, the Commissioner determines whether the claimant's RFC, age, education, and work experience allow for an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Benefits on March 29, 2018. (Tr. 18). In her application for Disability Insurance Benefits, Plaintiff alleged an initial onset date of October 15, 2017.[1] (Tr. 18, 256). The Social Security Administration denied Plaintiff's claims initially and upon reconsideration. (Tr. 18, 165, 175, 179).[2] Plaintiff requested a hearing (Tr. 185) and appeared before an Administrative Law Judge (ALJ) on January 13, 2020 (Tr. 18, 40).

In a hearing decision dated January 31, 2020, the ALJ determined Plaintiff was not disabled. (Tr. 18-32). The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of review. (Tr. 1-3).

*Statement of Facts and Evidence*

Plaintiff was born on April 5, 1969. (Tr. 31, 256, 258). Plaintiff was forty-eight (48) years old at the time of her alleged onset of disability. (Tr. 31). The ALJ found that Plaintiff had past relevant work experience as a cleaner, housekeeping. (Tr. 30).

The ALJ determined that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, right carpal tunnel syndrome status-post release surgery, right cubital tunnel syndrome status-post release surgery, tension headaches, generalized osteoarthritis, generalized anxiety disorder, major depressive disorder, and obsessive-compulsive disorder. (Tr. 21). The ALJ determined that Plaintiff suffered from the following non-severe medically determinable impairments: left closed fracture of lateral malleolus, essential

---

[1] Plaintiff's application summary for Supplemental Security Benefits lists an unknown date of onset of disability. (Tr. 258). However, Plaintiff asserts an alleged onset date of October 15, 2017 in her Brief. (Doc. 15, p. 1).

[2] It does not appear from the record that Plaintiff requested reconsideration of the initial denial of her application for Supplemental Security Income.

hypertension, left-sided carpal tunnel syndrome, and all other medically determinable impairments alleged and found in the record other than those found to be severe. (Tr. 21).

Considering the "paragraph B" criteria, the ALJ found that Plaintiff had no more than a moderate limitation in her ability to understand, remember, or apply information; no more than a moderate limitation in her ability to interact with others; a moderate limitation in her ability to concentrate, persist, or maintain pace; and no more than a moderate limitation in her ability to adapt or manage herself. (Tr. 23-24). Because the ALJ found that Plaintiff's medically determinable mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the "paragraph B" criteria were not satisfied. (Tr. 24). The ALJ found that the evidence failed to establish the presence of the "paragraph C" criteria. (Tr. 24-25).

Considering the evidence relating to all of Plaintiff's impairments, individually and in combination, the ALJ found no evidence that the combined clinical findings from such impairments reached the level of severity contemplated in the listings. (Tr. 22-25).

Considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work, except that she could frequently handle, finger, feel, push and/or pull with the right upper extremity; could frequently balance; could occasionally stoop, kneel, crouch, and crawl; could frequently climb stairs and ramps; could occasionally climb ladders, ropes and scaffolds; could occasionally be exposed to vibrations, unprotected heights and moving machinery parts; required a moderate noise work environment, as defined in the DOT and SCO, Appendix D; was able to understand and remember simple instructions, make simple work related decisions, carry-out simple instructions, could occasionally deal with changes in a routine work setting, and could occasionally deal with the public. (Tr. 25).

The ALJ determined that Plaintiff could perform her past relevant work as a cleaner, housekeeping, and that such work did not require performance of work-related activities precluded by her assessed RFC. (Tr. 30). Considering Plaintiff's age, education, work experience, and RFC, the ALJ also determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31-32).

Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time between October 15, 2017, the alleged onset date, through January 31, 2020, the date of the ALJ's decision. (Tr. 32).

## DISCUSSION

Plaintiff argues that the ALJ erred because he formulated Plaintiff's RFC without relying on a psychological opinion. (Doc. 15). In essence, Plaintiff argues that the ALJ erred in failing to order a mental health consultative examination because the record was devoid of a psychological opinion. *Id.* at 10-14.

The Social Security disability claims process is "inquisitorial, not adversarial, in nature, [though] claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). An ALJ has "a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Id.* (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). Where there are no "evidentiary gaps that result[] in unfairness or clear prejudice[,]" and the record contains sufficient evidence for the ALJ to make an informed decision, an ALJ does "not err if he does not order a consultative examination." *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) (per curiam) (first citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam); and then citing *Ingram*, 496 F.3d at 1269). Finally,

while an ALJ has a "basic" duty to develop a full and fair record even when a claimant is represented by counsel, the ALJ's basic duty does not rise to a "special duty" unless the claimant is unrepresented and has not waived the right to counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Here, the record contains sufficient evidence of Plaintiff's mental health symptoms and treatment such that the ALJ could make an informed decision. Said evidence is best reviewed in three categories. The Court will consider each as follows: (1) Plaintiff's medical evidence relating to her osteoarthritis, carpal tunnel syndrome, and related disc symptoms, as well as general well visits; (2) Plaintiff's in-patient treatment for her suicidal ideation; and (3) Plaintiff's follow-up sessions related to her in-patient treatment for her suicidal ideation.

<u>Osteoarthritis, Carpal Tunnel Syndrome, Related Disc Symptoms, and Well Visits</u>

On September 18, 2017, approximately one (1) month prior to the alleged onset of disability, Plaintiff reported that she discontinued gabapentin because it caused depression and suicidal ideations, but on examination she appeared active and alert. (Tr. 446-47). On December 5, 2017, Plaintiff appeared active and alert, and was in no apparent distress. (Tr. 443). On December 27, 2017, on examination Plaintiff appeared alert and oriented times three (3). (Tr. 471) (duplicated at 542, 658) (*accord* January 31, 2018 (Tr. 475) (duplicated at 550, 666)). On January 18, 2018, on examination Plaintiff appeared to have normal mood and affect and was active and alert. (Tr. 457). Plaintiff appeared oriented to time, place, and person on February 7, 2018. (Tr. 482) (duplicated at 554, 670).

On February 13, 2018, Plaintiff reported sleep disturbances and restless sleep. (Tr. 452). Similarly, on February 22, 2018, Plaintiff reported headaches and sleep disturbances, but also reported no fatigue. (Tr. 485) (duplicated at 559, 675). On March 1, 2018, Plaintiff reported

headaches and sleep disturbances. (Tr. 563) (duplicated at 679). The same results were obtained on March 14, 2018, when Plaintiff also appeared to be alert and oriented times three (3). (Tr. 489). A partial medical record electronically signed on March 16, 2018 showed that Plaintiff reported headaches and sleep disturbances, no fatigue, and appeared alert and oriented times three (3). (Tr. 565) (duplicated at 681).

In response to a depression screening during her visit to Albany Area Primary Health Care on March 1, 2018, Plaintiff responded in the negative when asked (1) if in the last two weeks she had been bothered by little interest or pleasure in doing things, and (2) if she was feeling down, depressed, or hopeless. (Tr. 498). On examination, she was found to have a full range of mood and affect and was goal directed, she was alert and oriented times three (3), was in no apparent distress, and was pleasant. (Tr. 498-99). The same results were obtained on March 20, 2018. (Tr. 495-96).

On April 26, 2018, Plaintiff showed no acute distress and appeared active and alert on examination. (Tr. 591). And while Plaintiff reported a history of depression and was noted to be seeking disability benefits during her visit to Phoebe Putney Memorial Hospital on June 11, 2018 (Tr. 510), on examination she was found to be active and alert (Tr. 587). Plaintiff again reported headaches and sleep disturbances, but also again reported no fatigue on December 31, 2018 (Tr. 571) (duplicated at 716), on January 14, 2019 (Tr. 575) (duplicated at 691, 712), and on February 11, 2019 (Tr. 580) (duplicated at 696, 708).

In response to a depression screening during her visit to Albany Area Primary Health Care on March 26, 2019, Plaintiff responded in the negative when asked (1) if in the last two weeks she had been bothered by little interest or pleasure in doing things, and (2) if she was feeling down, depressed, or hopeless, ultimately receiving a score of zero (0). (Tr. 750). On examination, she was found to have a full range of mood and affect and was goal directed, she was alert and oriented

times three (3), was in no apparent distress, and was pleasant. (Tr. 750-51). The same results were obtained on May 8, 2019. (Tr. 746). Similar examination results were obtained on July 17, 2019. (Tr. 742) (duplicated at 744).

Plaintiff sought medication management for her depression and anxiety on February 1, 2019 (Tr. 638) and April 1, 2019 (Tr. 621). However, on April 18, 2019, Plaintiff reported no headaches, no fatigue, and no depression. (Tr. 700).

<u>In-Patient Treatment for Suicidal Ideation</u>

On May 26, 2019, Plaintiff was initially assessed for suicidal ideation, worsening depression, and anxiety. (Tr. 605). She reported impaired work functioning and that she was seeking disability benefits. (Tr. 606). On May 28, 2019, a mental status examination revealed that Plaintiff's mood was stable, her affect was flat, she was lacking insight, and she was oriented times four (4) (Tr. 594), but during rounds in the open unit, Plaintiff reported that her mood had improved, and she denied depression or anxiety (Tr. 595). The plan, then, was to discharge Plaintiff "soon." *Id.* A progress note from May 28, 2019 indicated that Plaintiff had reported her depression and anxiety were improving, and she rated her depression as 5/10 and her anxiety as 1/10. (Tr. 603).

On May 29, 2019, a mental status examination revealed that Plaintiff's mood was stable, her affect was appropriate, her insight was fair, and she was oriented times four (4). (Tr. 596). At a post-crisis visit after discharge, on June 5, 2019, Plaintiff rated her depression as 1-2/10, and she was observed to be alert and pleasant. (Tr. 599).

Follow-Up Sessions

From September 3, 2019 through November 25, 2019, Plaintiff received approximately nineteen (19) follow-up sessions related to her in-patient treatment. (*See chronologically* Tr. 727, 730, 732, 734, 736, 738, 790, 792, 794, 796, 798, 779, 800 (duplicated at 802), 804, 806, 808, 784, 810, 812). At all but two (2) follow-up sessions, the first on October 23, 2019, and the second on November 20, 2019, Plaintiff's mood was found to be stable, her affect appropriate and she appeared alert and pleasant. On those two occasions, Plaintiff reported some trouble with anxiety or depression (Tr. 780, 784) and rated her depression as either 5/10 (Tr. 781) or as 6/10 (Tr. 786). At every follow-up session, except those on October 23, 2019 and November 20, 2019, Plaintiff reported that she was doing ok and remained well, and where she rated her depression and anxiety, she rated both as 3/10. (Tr. 728, 731, 733, 735, 737, 739, 791, 793, 795, 797, 799, 805, 807, 809, 811, 813).

The ALJ considered this evidence under the "paragraph B" criteria and found that Plaintiff's mental health impairments caused "no more than moderate" to "moderate" limitations in any of the functional areas. (Tr. 23-24). Accordingly, the ALJ found that the "paragraph B" criteria were not satisfied. (Tr. 24). The ALJ also considered whether the "paragraph C" criteria were satisfied and found that said criteria were not satisfied. (Tr. 24-25).

Plaintiff argues that additional evidence was necessary to support the ALJ's decision. However, the issue before the Court is whether sufficient evidence without evidentiary gaps was present in the record before the ALJ at the time he made his decision. It is apparent from the record that sufficient evidence as to Plaintiff's mental health and related symptoms was in the record and there were no evidentiary gaps. Accordingly, the Court finds that no consultative examination was required. *Ingram*, 496 F.3d at 1269; *Colon*, 660 F. App'x at 870.

Considering whether substantial evidence supported the ALJ's decision, the evidence reveals that, on examination, Plaintiff was generally found to be alert and oriented, and in no acute distress. Over the course of several depression screenings, Plaintiff denied any depression or anxiety. Of course, Plaintiff was treated on an in-patient basis for suicidal ideation. However, at sixteen (16) follow-up sessions following her release from in-patient treatment, when Plaintiff rated her depression and anxiety during those follow-up sessions, she rated both at the lower third of a ten (10) point scale, and at all sixteen (16) of those follow-up sessions she uniformly indicated that she was doing well. At only two (2) follow-up sessions did Plaintiff report some trouble with anxiety or depression or rate her depression as 5/10 or 6/10.

While there is evidence to support Plaintiff's allegations regarding depression and anxiety, the "issue before [the Court] is whether there was substantial evidence to support the [ALJ's] decision, not whether there could be substantial evidence in the record to support a different decision." *Rodriguez obo R.C. v. Berryhill*, 2021 WL 5023951 at *7 (11th Cir. 2021) (per curiam) (citing *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1282 (11th Cir. 2004)). "Even if we find that the evidence preponderates against the [ALJ's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. Having considered the ALJ's decision and the evidence in support thereof, the Court finds that the ALJ's decision is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239.

## CONCLUSION

As the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence, the Commissioner's decision is **AFFIRMED** pursuant to Sentence Four of § 405(g).

**SO ORDERED**, this 23rd day of February, 2022.

s/ ***THOMAS Q. LANGSTAFF***
UNITED STATES MAGISTRATE JUDGE